IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOHNNY JAVIER HERNANDEZ                                    PETITIONER
CRUZ, A073-666-958

V.                                          Civil Case No. 5:25-cv-00157-DCB-BWR

WARDEN RAFAEL VERGARA,                                    RESPONDENT
*Adams County Correctional Center*

## REPORT AND RECOMMENDATION

Petitioner Johnny Javier Hernandez Cruz ("Petitioner") is an immigration detainee who has been detained by U.S. Immigration and Customs Enforcement (ICE) since November 5, 2025 while proceedings under 8 U.S.C. § 1229a to determine his removability have been ongoing. Pet. [1] at 1. On December 15, 2025, Petitioner, through counsel, filed a habeas corpus Petition [1] under 28 U.S.C. § 2241. Petitioner did not provide a memorandum of law with the Petition. Petitioner requests that the Court "release Petitioner or provide the bond hearing to which he is entitled within 7 days, at which the Government bears the burden of justifying, by clear and convincing evidence, that he is a flight risk [or] danger to society." *Id.* at 9.

Having considered the Petition [1], Respondent's Response [5], Petitioner's Reply [8], the record, and relevant law, it is recommended that the Petition [1] be dismissed because Petitioner is subject to detention without bond under 8 U.S.C. § 1225(b)(2)(A). *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *reh'g en banc denied* (Apr. 9, 2026). And, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim,* 538 U.S. 510, 531

(2003).

## I. BACKGROUND

### A.    Factual background

Petitioner is a native and citizen of Honduras who entered the United States illegally in 2001. Pet. [1] at 7; Notice to Appear [5-1] at 1. "Petitioner is the father of two U.S.-born children and the stepfather of his" wife's two children. Pet. [1] at 7. According to the Petition, "[p]rior to his detention, Petitioner played an integral role in all of their lives. He resided with his wife, his youngest son, and his two stepchildren, and he maintained a stable, loving parental relationship with his older son." *Id.* "For the past ten years, Petitioner has operated a successful freelance handyman business[.]" *Id.* "He also contributes significantly to the household by preparing meals for the family and attending church on the weekends." *Id.*

ICE detained Petitioner on November 5, 2025, after "the current Presidential Administration began detaining illegal alien residents, like the petitioner[ ] here, for removal proceedings without bond, rather than bonding and releasing them." *Buenrostro,* 166 F.4th at 498. "[I]n July 2025, the Board of Immigration Appeals (BIA) decided *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, which reconsidered the statutory framework and concluded that aliens who enter the United States without inspection and admission are subject to mandatory detention under § 1225(b)(2)." *Id.* at 500.

According to the Petition, on November 5, 2025, "Petitioner was stopped by a

2

police officer while driving home from work. The officer transferred Petitioner to the custody of ICE. ICE detained him at the Baltimore Detention Center before transferring him to Mississippi, where he has remained detained ever since." Pet. [1] at 7. According to Respondent, Petitioner was served with "a Notice to Appear ('NTA') before an Immigration Judge ('IJ') on January 14, 2026, for a custody redetermination (bond) hearing based on violations of Sections 212(a)(6)(A)(i) of the INA." Resp. [5] at 1-2. According to Respondent, "[b]efore the bond hearing, the Petitioner failed to file any applications for relief or protection from removal during the required period, so the IJ ordered the Petitioner removed to Honduras on December 11, 2025." *Id.* at 2 (citing IJ Order [5-2]).

Petitioner appealed the IJ's decision on December 12, 2025, and the automated case information system provided by the Department of Homeland Security's Executive Office for Immigration Review shows that Petitioner's appeal remains pending. *See* acis.eoir.justice.gov (last visited May 27, 2026).

B.    Arguments

Count One of the Petition is titled "Violation of 8 U.S.C. § 1226(a)/Unlawful Denial of Bond Hearing." Pet. [1] at 8. Count One alleges that "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens who are subject to inadmissibility as being present in the United States without admission or parole. Such noncitizens are detained under § 1226(a), unless they are subject to another detention provisions, such as § 1225(b)(1), § 1226(c), or § 1231." *Id.*

3

Count Two is titled "Violation of the Administrative Procedure Act/Unlawful Denial of Bond." *Id.* Count Two reurges the argument that 8 U.S.C. § 1225(b)(2) does not apply to Petitioner. *Id.* Count Two alleges that "[t]he application of § 1225(b)(2) to bar Petitioner from receiving a bond hearing before an IJ is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. *See* 5 U.S.C. § 706(2)." *Id.* at 9.

Count Three, titled "Violation of Procedural Due Process," alleges that "Petitioner has a fundamental interest in liberty and being free from official restraint. Respondents' detention of Petitioner without a bond hearing to determine whether he is a flight risk or danger to others violates his right to due process." *Id.* For the first time in his Reply, Petitioner explains that he is alleging a violation of procedural due process and asks the Court to balance the three-factor procedural due process test set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976) in his favor to conclude that his interest in being free from detention outweighs ICE's interest in detaining him. Reply [8] at 12-15.

## II. DISCUSSION

28 U.S.C. § 2241 confers federal district courts "within their respective jurisdictions" the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241. The writ of habeas corpus is "available to every individual detained within the United States," including noncitizens. *Hamdi v.*

4

*Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).

"A district court has subject matter jurisdiction to hear an alien's Section 2241 petition challenging the lawfulness of his or her detention." *Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022); *see Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Imran v. Harper,* No. 25-30370, 2026 WL 93131, *1 (5th Cir. Jan. 13, 2026) ("district courts have subject-matter jurisdiction to review § 2241 petitions challenging the lawfulness of a noncitizen's detention").

A.   8 U.S.C. § 1225(b)(2)(A) Applies to Petitioner

Petitioner argues that the immigration detention statute 8 U.S.C. § 1226(a), which allows release on bond, applies to him and not 8 U.S.C. § 1225(b)(2)(A), which prohibits release on bond. Pet. [1] at 2-3, 8; Reply [8] at 4-10. Since the Petition was filed and briefing completed, the Fifth Circuit decided *Buenrostro* on February 6, 2026, which forecloses Petitioner's statutory argument that 8 U.S.C. § 1225(b)(2)(A) does not apply to him. According to *Buenrostro,* aliens who are present in the United States without admission are "applicants for admission" who are "seeking admission" and "shall be detained" without bond under 8 U.S.C. § 1225(b)(2)(A) while their 8 U.S.C. § 1229a proceedings are ongoing. *Buenrostro,* 166 F.4th and 502-508. Petitioner has no statutory right to a bond hearing.

5

B.    Petitioner Does Not Have a Claim Under the Administrative Procedure Act

In Count Two, Petitioner invokes the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), again asserting the argument that 8 U.S.C. § 1225(b)(2) does not apply to him, and further claiming that his detention is arbitrary and capricious. Pet. [1] at 8-9. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

In *Trump v. J.G.G.,* five detained Venezuelan nationals accused of being members of a designated foreign terrorist organization, along with a putative class, dismissed their habeas claims and invoked the APA to seek equitable relief against a Presidential Proclamation to detain and remove them under the Alien Enemies Act ("AEA"). 604 U.S. 670, 671-72 (2025). "They challenge[d] the Government's interpretation of the Act and assert[ed] that they did not fall within the category of removable alien enemies." *Id.* at 672. The Supreme Court did not reach the APA claim, finding "[r]egardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Id.* (quoting *Heck v. Humphrey,* 512 U.S. 477, 487 (1994)).

6

Petitioner's claims likewise fall within the core of the writ of habeas corpus and must be brought through the vehicle of habeas, not the APA. *Id.* at 674 (Kavanaugh, J., concurring) (finding "habeas corpus, not the APA, is the proper vehicle here").

C.     <u>Petitioner's Detention Does Not Violate Due Process</u>

The Petition advances a procedural due process claim, citing *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). Pet. [1] at 9. No memorandum of law was provided with the Petition proposing how to analyze the due process claim. For the first time in his Reply, Petitioner asks the Court to apply the three-factor test set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976) and conclude that his interest in being free from detention outweighs ICE's interest in detaining him. Reply [8] at 12-14. "A reply memorandum is not the appropriate place to raise new arguments." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 876 F. Supp. 2d 758, 768 (S.D. Miss. 2012). Because Petitioner's argument based on the *Eldridge* factors was not presented with the Petition, and Respondent had no opportunity to address the argument in his Response, the Court may decline to consider the argument. *See Hollis v. Lynch,* 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.").

But even on the merits, there is no due process violation. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or

7

permanent." *Zadvydas*, 533 U.S. at 693.

*Buenrostro* did not resolve a due process claim. The Fifth Circuit in *Buenrostro* did remark, however, that "[t]he petitioners' fears about potential abuse of detention pending removal proceedings under Section 1225b2A are wholly speculative. In any event, *Zadvydas v. Davis,* 533 U.S. 678, 678, 121 S. Ct. 2491, 2492, 150 L.Ed.2d 653, (2001), has no direct application to aliens who are detained and being given due process during removal proceedings." *Buenrostro,* 166 F. 4th at 508.

The Petition relies on *Zadvydas,* an opinion the Fifth Circuit found had "no direct application to aliens who are detained and being given due process during removal proceedings." *Id. Zadvydas* is a post-removal-period case concerning detention under 8 U.S.C. § 1231(a)(6). In *Zadvydas,* the Supreme Court found a due process violation where the petitioners had final orders of removal, but their removal was "no longer practically attainable" because either countries refused to accept them or had no repatriation agreement with the United States. *Zadvydas,* 533 U.S. at 684-86. Section 1231(a)(6) required the Attorney General to detain an alien for the first 90 days after a final removal order, and after that, provided that certain aliens "may be detained." *Id.* (quoting 8 U.S.C § 1231(a)(6)). The Supreme Court found ambiguity in § 1231(a)(6)'s use of "may" and for due process purposes "construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal[.]'" *Jennings v. Rodriguez,* 583 U.S. 281, 298-99 (2018) (quoting *Zadvydas,* 533 U.S. at 699). "[I]t further held that six

8

months is a presumptively reasonable period. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Id.* (citing *Zadvydas,* 533 U.S. at 701).

*Demore* is a post-removal-period detention case that distinguished *Zadvydas* and held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore,* 538 U.S. at 531. *Demore* addressed detention pending a determination of removability under 8 U.S.C. § 1225(c), which mandates no-bond detention pending resolution of 8 U.S.C. § 1229a proceedings for aliens who have been convicted of one of a specified set of crimes. *Id.* at 513-14. *Demore* found that post-removal-period detention under § 1231(a)(6) is "materially different" from detention pending a determination of removability because "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" while detention pending a determination of removability ends when the 8 U.S.C. § 1229a removal proceedings conclude. *Id.* at 528-31; *see Jennings,* 583 U.S. at 300 (finding "*Zadvydas*'s reasoning is particularly inapt" in the context of detention pending a determination of removability under 8 U.S.C. § 1225 and § 1226).

*Demore* concluded that Congress may authorize pre-removal-period detention without an individualized assessment of dangerousness or flight risk. *Demore,* 538 U.S. at 530. *Demore* explained that "'[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be

9

unacceptable if applied to citizens.'" *Id.* at 522 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976)). *Demore* reasoned that while removal proceedings are pending, "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528.

*Demore* is factually distinguishable because it addressed detention of criminal aliens under 8 U.S.C. § 1225(c). But *Demore* did not qualify the statement that "[d]etention during removal proceedings is a constitutionally permissible part of that process" by limiting it to criminal aliens. *Id.* at 530. *Demore* instead observed that the Supreme Court "said more than a century ago [that] deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'" *Id.* at 523 (quoting *Wong Wing v. United States,* 163 U.S. 228, 235 (1896)). *Demore* emphasized that in 1896, the Supreme Court said, "[w]e think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid." *Id.* at 531 (quoting *Wong Wing,* 163 U.S. at 235).

*Demore* pointed to the 1952 decision in *Carlson v. Landon* where the Supreme Court found that

> [d]eportation is not a criminal proceeding and has never been held to be punishment. No jury sits. No judicial review is guaranteed by the Constitution. Since deportation is a particularly drastic remedy where aliens have become absorbed into our community life, congress has been careful to provide for full hearing by the Immigration and Naturalization Service before deportation. Such legislative provision

10

requires that those charged with that responsibility exercise it in a manner consistent with due process. Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings. Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed by the 1950 Act in the Attorney General to detain aliens without bail[.]

342 U.S. 524, 537-38 (1952).

*Demore* denoted *Reno v. Flores,* 507 U.S. 292 (1993), where the Supreme Court in 1993 concluded that "a 'blanket' presumption of the unsuitability of custodians other than parents, close relatives, and guardians' to care for [] juvenile aliens" detained in childcare institutions pending deportation did not violate due process. *Demore,* 538 U.S. at 526 (quoting *Flores,* 507 U.S. at 313). The Supreme Court observed that *Flores* "emphasized that 'reasonable presumptions and generic rules,' even when made by the INS rather than Congress, are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to aliens." *Id.* (quoting *Flores,* 507 U.S. at 313-14).

While Petitioner asserts that procedural due process requires the government to provide him with a bond hearing to determine whether he is a flight risk or danger to the community to continue detention, *Carlson* upheld the constitutionality of no-bail detention for aliens who "did not deny that they were members of the Communist Party or that they were therefore deportable." *Id.* at 523-24 (summarizing *Carlson*). *Demore* upheld 28 U.S.C. § 1226(c)'s no-bond detention of aliens convicted of one of a specified set of crimes. *Id.* at 513. *Carlson* said that "[t]he protection of citizenship is

11

open to those who qualify for its privileges," and "[s]o long . . . as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders." *Carlson,* 342 U.S. at 534, 537. *Demore* held that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal. The evidence Congress had before it certainly supports the approach it selected even if other, hypothetical studies might have suggested different courses of action." *Demore,* 538 U.S. at 528 (citations omitted); *see Diaz,* 426 U.S. at 78 ("The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship[.]").

Petitioner urges the Court to apply the *Eldridge* factors, but the Supreme Court did not apply the *Eldridge* factors in *Demore, Zadvydas,* or *Flores. Wong Wing* and *Carlson* were decided before *Eldridge.* The Supreme Court "ha[s] never viewed [*Eldrige*] as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States,* 534 U.S. 161, 168 (2002). Petitioner's proposal to use *Eldridge*'s factors which consider "the probable value, if any, of additional or substitute procedural safeguards," *Eldridge,* 424 U.S. at 335, does not align with Supreme Court law establishing that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome

12

means to accomplish its goal." *Demore,* 538 U.S. at 528. *Eldridge* does not account for the "fundamental premise of immigration law" that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore,* 538 U.S. at 521 (quoting *Diaz,* 426 U.S. at 79). The *Demore* majority criticized the *Demore* dissent for "seek[ing] to avoid this fundamental premise of immigration law." *Id.* at 521. Petitioner wholly avoids the issue by not discussing it.

Arguments like Petitioner's that urge the habeas court to conclude that an alien's liberty interests outweigh the government's interest in detention have not been successful in the context of immigration detention pending a determination of removability. In *Carlson,* some of the petitioners alleged that "their many years' residence spent in this country without giving basis for fear of action by them inimical to the public welfare during the pendency of their deportation proceedings, their integration into community life through marriage and family connections, and their meticulous adherence to the terms of previous bail, allowed under a former warrant charging deportability." *Carlson,* 342 U.S. at 529. The other petitioner had been released on $2,000.00 bail and was re-detained after enactment of the Internal Security Act of 1950 based on an order from the INA's acting commissioner. *Id.* at 532. *Carlson's* analysis did not focus on these facts but looked to the evidence "Congress had before it of resident aliens' leadership in communist domestic activities sufficient to furnish reasonable ground for action against alien resident

13

Communists." *Id.* at 536. "The aliens in *Carlson* had *not* been found individually dangerous[,]" but the Supreme Court "nonetheless concluded that the denial of bail was permissible 'by reference to the legislative scheme to eradicate the evils of Communist activity.'" *Demore,* 538 U.S. at 524 (emphasis in original) (quoting *Carlson,* 342 U.S. at 543).

In rejecting the juvenile alien detainees' "best interests" argument in *Flores,* the Supreme Court observed that the claim was

> in essence, a demand that the INS program be narrowly tailored to minimize the denial of release into private custody. But narrow tailoring is required only when fundamental rights are involved. The impairment of a lesser interest (here, the alleged interest in being released into the custody of strangers) demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose. This leaves ample room for an agency to decide, as the INS has, that administrative factors . . . favor using one means rather than another.

*Flores,* 507 U.S. at 305.

The Supreme Court in *Flores* recognized that the petitioners' procedural due process claim was not actually a procedural due process claim. *Id.* at 308. The petitioners' argument that the "procedural system is unconstitutional because it does not require the Service to determine in the case of each individual alien juvenile that detention in INS custody would better serve his interests than release to some other 'responsible adult,'" was "just the 'substantive due process' argument recast in 'procedural due process' terms" and was rejected "for the same reasons." *Id. Flores* concluded that

14

> [w]here a juvenile has no available parent, close relative, or legal guardian, where the government does not intend to punish the child, and where the conditions of governmental custody are decent and humane, such custody surely does not violate the Constitution. It is rationally connected to a government interest in preserving and promoting the welfare of the child and is not punitive since it is not excessive in relation to that valid purpose.

*Id.* at 303 (internal quotations and citations omitted). *Flores* concluded that "the INS policy now in place is a reasonable response to the difficult problems presented when the Service arrests unaccompanied alien juveniles. It may well be that other policies would be even better, but we are [not] a legislature charged with formulating public policy." *Id.* at 314 (internal quotation and citation omitted).

And in *Demore,* the Supreme Court overturned the Ninth Circuit's holding that "§ 1226(c) violates substantive due process as applied to respondent because he is a permanent resident alien." *Id.* at 515 (referencing *Kim v. Ziglar,* 276 F.3d 523 (9th Cir. 2002)). The Ninth Circuit emphasized that "permanent resident aliens constitute the most favored category of aliens and that they have the right to reside permanently in the United States, to work here, and to apply for citizenship." *Id.* (citing *Kim,* 276 F.3d at 528). The Ninth Circuit "rejected the Government's two principal justifications for mandatory detention under § 1226(c)" – "ensuring the presence of criminal aliens at their removal proceedings" and "protecting the public from dangerous criminal aliens." *Id.* The Ninth Circuit "discounted the first justification because it found that not all aliens detained pursuant to § 1226(c) would ultimately be deported" and discounted "the second justification on the grounds that the

15

aggravated felony classification triggering respondent's detention included crimes that the court did not consider 'egregious' or otherwise sufficiently dangerous to the public to necessitate mandatory detention." *Id.* at 515. Relying on *Zadvydas,* "the Court of Appeals concluded that the INS had not provided a justification 'for no-bail civil detention sufficient to overcome a lawful permanent resident alien's liberty interest.'" *Id.* (quoting *Kim,* 276 F.3d at 535).

The Supreme Court in *Demore* reversed, finding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Id.* at 513. The Supreme Court referenced evidence before Congress, including that "one of the major causes of the INS's failure to remove deportable aliens was the agency's failure to detain those aliens during their deportation proceedings." *Id.* at 519 (citing Department of Justice report). "Once released, more than 20% of deportable criminal aliens failed to appear for their removal hearings." *Id.* (citing S. Rep. 104-48 (1995)). Evidence before Congress "strongly support[ed] Congress' concern that, even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." *Id.* at 520. The Supreme Court concluded that "[t]he evidence Congress had before it certainly supports the approach it selected even if other, hypothetical studies might have suggested different courses of action." *Id.* at 528.

16

Petitioner is inviting the Court to apply the analysis that the Supreme Court rejected in *Demore* because *Demore* rebuked the Ninth Circuit's misapplying *Zadvydas* to conclude that "INS had not provided a justification 'for no-bail civil detention sufficient to overcome a lawful permanent resident alien's liberty interest.'" *Demore,* 538 U.S. at 515 (quoting *Kim,* 276 F.3d at 535). The appropriate question to ask, according to *Demore, Zadvydas, Flores,* and *Carlson* is whether immigration detention bears a reasonable relation to its purpose. *See Demore,* 538 U.S. at 527-28 (finding no-bond detention of criminal aliens necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings"); *Zadvydas,* 533 U.S. at 699 (internal quotation omitted) (concluding that "where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed" and finding the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal"); *Flores,* 507 U.S. at 309 (finding regulation did not go "beyond the scope of the Attorney General's discretion to continue custody over arrested aliens under 8 U.S.C. § 1252(a)(1)" because the regulation had a "reasonable foundation," meaning it "rationally pursue[d] a purpose that [was] lawful for the INS to seek"); *Carlson,* 342 U.S. at 532 ("Congress had before it evidence of resident aliens' leadership in communist domestic activities sufficient to furnish reasonable ground for action against alien resident Communists").

17

According to *Buenrostro*, flight risk is an immigration purpose served by no-bond detention of applicants for admission under 8 U.S.C. § 1225(b)(2)(A). *Buenrostro* observed that "the Department of Justice Inspector General found in 1997 that 'when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States.' 62 Fed. Reg. at 10323. That situation exists today on a much larger scale." *Buenrostro*, 166 F.4th at 508. Detention of applicants for admission serves the immigration purpose of preventing an unacceptable rate of flight that occurs when aliens are released from custody, "thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore,* 538 U.S. at 528.

That some applicants for admission are not flight risks does not mean that the Fifth Amendment requires the government to individually determine whether each detained applicant for admission is a flight risk because "when the Government deals with deportable aliens, the Due Process clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528 (finding due process did not require an individualized bond hearing); *see Carlson,* 342 U.S. at 537-38 (same). That aliens detained under § 1225(b)(2)(A) might not ultimately be deported was an argument that did not affect the outcome in *Demore. Demore,* 538 U.S. at 515.

Congress provided for individualized process in that an "examining immigration officer determine[d]" that Petitioner was "not clearly and beyond a doubt entitled to be admitted" when Petitioner was detained. *See* 8 U.S.C. § 1225(b)(2)(A). Petitioner is receiving individualized process now because § 1225(b)(2)(A) detention

coincides with a "proceeding under Section 1229a." *See id.* Petitioner's 8 U.S.C. § 1229a proceedings are ongoing.

This Court's function is not to determine whether detention of all applicants for admission is "poor public policy, with the balance of harms outweighing any positive benefits." *Schall v. Martin,* 467 U.S. 253, 281 (1984). The question this Court must decide is whether the preventive detention system Congress chose comports with constitutional standards. According to over a century of Supreme Court precedent, Petitioner's temporary detention during the pendency of his removal proceedings is constitutionally permissible. *See Demore,* 538 U.S. at 523 (referencing *Wong Wing,* 163 U.S. at 235).

## III. RECOMMENDATION

It is recommended that the Petition [1] be dismissed.

## IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy of the objections. *Id.* The district judge will determine de novo any part of the Report and Recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the Report and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1).

**SIGNED,** this 27th day of May 2026.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

20